# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| Michelle Morris, Marin Kandil, Rebecca Sauerer, Jae Kateylyn Letzkus, Brooke Ann Davila, and Joanne Batjes, | Civil Action No. _____ |
| Individually and on behalf others similarly situated, | JUDGE |
| | MAGISTRATE JUDGE |
| Plaintiffs, | |
| v. | **Collective Action Complaint** |
| Body Contour Centers, LLC, d/b/a Sono Bello, | **Jury Demand Endorsed Hereon** |
| Christopher M. Parr, | |
| -and- | |
| Aesthetics Physicians, P.C. | |
| Defendants. | |

## COLLECTIVE ACTION COMPLAINT

Named Plaintiffs Michelle Morris, Marin Kandil, Rebecca Sauerer, Jae Kateylyn Letzkus, Brooke Ann Davila, and Joanne Batjes (collectively "Named Plaintiffs"), individually and on behalf of others similarly situated, file this Collective Action Complaint against Defendant Body Contour Centers, LLC d/b/a Sono Bello, Defendant Christopher M. Parr and Defendant Aesthetics Physicians, P.C. (collectively "Defendants") for damages resulting from Defendants' joint failure to pay their patient care consultants and other similarly situated sales consultants overtime wages in accordance with the Fair Labor Standards Act ("FLSA").

## JURISDICTION AND VENUE

1. This action is brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201, *et seq*. and 28 U.S.C. §1331.

2. Venue is proper in this forum pursuant to 28 U.S.C. §1391, because the Named Plaintiff Michelle Morris and others similarly where jointly employed by Defendants in the Northern District of Ohio, a substantial part of the events or omission giving rise to the claims of the Named Plaintiffs and others similarly situated occurred in this District, Defendants reside in this District, and Defendants have done substantial business in this District.

**PARTIES**

    A. **Named Plaintiffs**

3. Named Plaintiff Michelle Morris ("Plaintiff Morris") is an individual, United States citizen, and a resident of the State of Ohio living in the Northern District of Ohio. She was jointly employed by Defendants from approximately May 2015 through approximately March 9, 2017 as a patient care consultant. Plaintiff Morris worked out of Defendants' Cleveland, Ohio location.

4. Named Plaintiff Marin Kandil ("Plaintiff Kandil") is an individual, United States citizen, and a resident of the State of Arizona. She was jointly employed by Defendants from approximately May, 2014 through approximately June, 2015 and November, 2015 through approximately January, 2017 as a patient care consultant. Plaintiff Kandil worked out of Defendants' Scottsdale, Arizona location.

5. Named Plaintiff Rebecca Sauerer ("Plaintiff Sauerer") is an individual, United States citizen, and a resident of the State of Minnesota. She was jointly employed by Defendants from approximately April, 2016 through approximately March, 2017 as a patient care consultant. Plaintiff Sauerer worked out of Defendants' Edina, Minnesota location.

6. Named Plaintiff Jae Kateylyn Letzkus ("Plaintiff Letzkus") is an individual, United States citizen, and a resident of the State of Missouri. She was jointly employed by

Defendants from approximately July, 2014 through approximately September, 2016 as a patient sales consultant. Plaintiff Letzkus worked out of Defendants' St. Louis, Missouri location.

7. Named Plaintiff Brooke Ann Davila ("Plaintiff Davila") is an individual, United States citizen, and a resident of the State of Missouri. She was jointly employed by Defendants from approximately October, 2015 through approximately May, 2017 as a patient care consultant. Plaintiff Davila worked out of Defendants' San Diego, CA location and Overland Park, KS location.

8. Named Plaintiff Joanne Batjes ("Plaintiff Batjes") is an individual, United States citizen, and a resident of the State of Illinois. She was jointly employed by Defendants from approximately February, 2016 through approximately February, 2017 as a traveling patient consultant. Plaintiff Batjes worked out of Defendants' Denver, Houston, Chicago, Cleveland, Cincinnati, Minnesota, Missouri and California locations.

9. Named Plaintiffs have consented in writing to assert claims for overtime pay under the FLSA. (*See attached* **Exhibit A**). As this case proceeds, it is likely that other individuals will sign consent forms and join this action as opt-in plaintiffs.

### B. Defendants

10. Defendant Body Contour Centers, LLC d/b/a Sono Bello ("Defendant BCC") is a closely held, Washington State Limited Liability Company. It is registered to do business in the State of Ohio and may be served through its Registered Agent Corporation Service Company, 50 West Broad Street, Suite 1330, Columbus, Ohio 43215.

11. Defendant Christopher M. Parr ("Defendant Parr") is the majority owner and Manager of Defendant BCC. He can be served at his residence of 1370 116th Ave NE, Ste 203, Bellevue, WA 98004.

12. Defendant Aesthetics Physicians, P.C. ("Defendant APPC") is an Arizona professional corporation, which may be served at its headquarters at 8525 E. Pinnicle Peak Rd. Suite 101 Scottsdale, AZ 85255.

## II. FACTS

### A. Defendants Are Joint Employers, Jointly Operating Medical Clinics.

13. Defendants are and have been, jointly and individually, "employers" as that term is defined by the FLSA of Named Plaintiffs and those similarly situated.

14. All Defendants jointly operate medical clinics under the trade name of "Sono Bello" or "Sono Bello Body Contour Centers."

15. Defendant BCC holds rights to the trade name "Sono Bello," which is licensed to Defendant APPC as its practice name.

16. Defendant APPC is publicly identified as "Sono Bello" and as "the medical practice for Sono Bello."[1]

17. Defendant BCC is contracted by Defendant APPC to provide all management and support services necessary and appropriate for the provision of medical services (*i.e.*, elective, cosmetic, surgical and non-surgical procedures).

18. Defendant BCC leases and manages the locations in which medical services and procedures are provided, and in which Named Plaintiffs and those similarly situated work.

19. Defendant BCC manages 16 clinics in 12 states. These clinics/facilities are located in Bellevue and Tacoma, Washington; Beverly Hills, Sacramento and San Diego, California; Chicago, Illinois; Cincinnati and Cleveland, Ohio; Edina, Minnesota; Greenwood,

---

[1] *See for example* https://www.linkedin.com/company/aesthetic-physicians-pc; www.buzzfile.com/business/Sono-Bello-800-995-1136; and https://www.bbb.org/western-washington/business-reviews/physicians-and-surgeons-cosmetic-plastic-and-reconstructive-surgery/sono-bello-in-bellevue-wa-22508430 (*last viewed on* October 23, 2017).

Colorado; Houston, Texas; Overland Park, Kansas; Portland, Oregon; Salt Lake City, Utah; Scottsdale, Arizona; and St. Louis, Missouri ("Medical Clinics").

20. Defendants coordinate marketing, jointly advertise, solicit or otherwise represent the availability of medical and cosmetic procedures at their jointly operated Medical Clinics.

21. Defendant BCC is responsible for the management and administration of the Medical Clinic facilities; as well as other support services including marketing.

22. Defendant APPC established a set of criteria that patient care consultants, including Plaintiffs and those similarly situated, are required to use when consulting with patients about medical procedures and services.

23. Other services provided by Defendant BCC in the operations of the Medical Clinics include call center services, which are subject to Defendant APPC's on-going supervision and final approval.

24. Defendant BCC may provide or arrange for additional services only if authorized by Defendant APPC, and any obligation to Defendant BCC or its affiliates for such services must be approved by Defendant APPC.

25. During relevant times, Defendant Parr, as majority owner and Manager, has had operational control over significant aspects of the day-to-day functions of Named Plaintiffs and those similarly situated.

26. During relevant times, Defendant APPC has had operational control over significant aspects of the day-to-day functions of Named Plaintiffs and those similarly situated.

27. During relevant times, Defendants BCC and Parr have had the authority to hire, fire and discipline employees, including Named Plaintiffs and those similarly situated.

28. During relevant times, Defendants BCC and Parr have had the authority to set rates and methods of compensation of Named Plaintiffs and those similarly situated.

29. During relevant times, Defendants BCC and Parr have had the authority to control the work schedules and employment conditions of Named Plaintiffs and those similarly situated.

30. During relevant times, Defendants BCC and Parr have had ultimate authority and control of employment records.

31. During relevant times, Defendants BCC, Parr and APPC have mutually benefitted from the work performed by Named Plaintiffs and those similarly situated.

32. During relevant times, Defendants BCC, Parr and APPC have not acted entirely independently of each other and have not been completely disassociated with respect to Named Plaintiffs and those similarly situated.

33. During relevant times, Defendants BCC, Parr and APPC shared the services of Named Plaintiffs and those similarly situated.

34. During relevant times, Defendants BCC, Parr and APPC acted directly or indirectly in the interest of each other in relation to Named Plaintiffs and those similarly situated.

35. Defendants are "enterprises" as defined by the FLSA, 29 U.S.C. § 203(r)(1) and are enterprises engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1).

36. Defendants' gross annual sales made or business done has exceeded $500,000 at all relevant times.

**COLLECTIVE ACTION FACTUAL ALLEGATIONS**

37. Named Plaintiffs and all other similarly situated individuals are current and former employees of Defendants within the meaning of the FLSA and were jointly employed by

Defendants within three years of the date this Complaint was filed. 29 U.S.C. §§ 203(d) and (e)(1), 255.

38. During the applicable statutory period, Named Plaintiffs and those similarly situated were employed as patient care consultants, traveling patient care consultants, sales consultants, and similar job titles, and held non-supervisory sales positions.

39. The duties of Named Plaintiffs and those similarly situated included promoting and selling Defendants' medical and cosmetic procedures such as tumescent liposuction or laser-assisted liposuction, body or VelashapeTM contouring, laser lipolysis, cellulite reduction, wrinkle reduction, skin tightening, and facelift procedures, along with other medical-cosmetic services to Defendants' customers during consultations.

40. Named Plaintiffs and those similarly situated performed this sales work from inside Defendants' offices.

41. Named Plaintiffs and those similarly situated were not required to have specialized knowledge or advanced degrees.

42. Named Plaintiffs and those similarly situated had no supervisory duties and did not regularly exercise judgment and discretion concerning the business operations of Defendants or Defendants' customers.

43. Named Plaintiffs and those similarly situated are jointly employed by Defendants to advertise and solicit customers to undergo medical procedures at Defendants' Medical Clinics. They advise and recommend Defendants' medical procedures, operations and treatments.

44. The job duties of the patient care consultants, including Named Plaintiffs and those similarly situated, are primarily defined the Sono Bello Body Contour Centers Job Description for Patient Care Consultants. *Attached as* **Exhibit B**.

45. Patient care consultants ascertain patient needs, advise patients about available medical procedures, screen patients for suitability to undergo certain medical procedures, advise patients about the various risks and benefits associated with the medical procedures and other consultative services concerning the Medical Clinic's products and procedures.

46. The primary role of patient care consultants, including Named Plaintiffs and those similarly situated, "is to educate clients about body contouring solutions during a private initial consultation, while also providing information about financing options, scheduling, realistic expectations and related surgical and/or non-surgical procedures." **Ex. B**.

47. Other essential duties and responsibilities include:

   a. Responding to patient phone calls, questions and concerns regarding medical and cosmetic procedures; pre and post-operatively.

   b. Scheduling surgeries and pre-op appointments.

   c. Acting as a patient liaison, answering questions and responding to patient emails.

   d. Providing informative consultations to prospective patients, including all aspects of the medical procedures.

   e. Preparing paperwork for processing surgical patients.

   f. Assisting with communications between patients and medical staff.

   g. Listening to concerns, identifying solutions to problems and providing patients and prospective patients with products, services and knowledge for their needs.

   h. Making recommendations concerning the Medical Clinic's products and services.

48. Employment with Defendants of patient care consultants, including Named Plaintiffs and those similarly situated, was contingent on proof of required vaccinations (TB) and Hepatitis B.

49. Named Plaintiffs and those similarly situated were required to attend appointments and consultations at Defendants' Medical Clinics.

50. All patient care consultants, including Named Plaintiffs and those similarly situated, are paid a base salary of about $50,000 per year, plus a bonus amount that is based on sales revenue.

51. While some patient care consultants make over $100,000 per year, some do not; meaning that for some similarly situated individuals, less than half of their compensation is in the form of bonuses.

52. Named Plaintiffs and those similarly situated regularly worked more than forty (40) hours per week.

53. Typically, Named Plaintiffs and those similarly situated were required to arrive thirty (30) minutes before Defendants' Medical Clinic opened and stay until the last scheduled appointment ended. This routinely required Named Plaintiffs and those similarly situated to work in Defendants' clinic(s) 9 to 12 hours per day. As a result, Named Plaintiffs and those similarly situated often worked over forty (40) hours in a workweek.

54. In addition, during at least approximately one (1) to two (2) weeks per month Named Plaintiffs and those similarly situated were required to work six (6) days per week, from approximately 9 to 12 hours per day. Defendants required Named Plaintiffs and those similarly situated to work the six-day workweeks at the end of the month in order to meet their sales quotas. As a result, Named Plaintiffs and those similarly situated often worked over forty (40) hours in a workweek

55. For example, during her employment with Defendants, Plaintiff Morris regularly worked more than 40 hours per week, but was not paid one and one-half her regular rate for all

hours worked over 40. Her base salary was $50,000 and her average bonuses totaled $75,000 per year.

56. During her employment with Defendants, Plaintiff Kandil regularly worked more than 40 hours per week, but was not paid one and one-half her regular rate for all hours worked over 40. Her base salary was $50,000.00 and her average bonuses totaled between $75,000 and approximately $80,000 per year.

57. During her employment with Defendants, Plaintiff Sauerer regularly worked more than 40 hours per week, but was not paid one and one-half her regular rate for all hours worked over 40. Her base salary was $50,000 and her bonuses totaled $10,000 to $15,000 per year.

58. During her employment with Defendants, Plaintiff Letzkus regularly worked more than 40 hours per week, but was not paid one and one-half her regular rate for all hours worked over 40. Her base salary was $50,000 and her average bonuses totaled between approximately $65,000 and $80,000 per year.

59. During her employment with Defendants, Plaintiff Davila regularly worked more than 40 hours per week, but was not paid one and one-half her regular rate for all hours worked over 40. Her base salary was $50,000 and her average bonuses totaled approximately $20,000 per year.

60. During her employment with Defendants, Plaintiff Batjes regularly worked more than 40 hours per week, but was not paid one and one-half her regular rate for all hours worked over 40. Her base salary was $60,000 and her average bonuses totaled approximately $30,000 per year.

61. At all times relevant herein, Named Plaintiffs and those similarly situated were employees of Defendants as defined in the FLSA.

62. Defendants BCC and Parr classified Named Plaintiffs and those similarly situated as exempt from the FLSA's wage and hour protections. Plaintiffs and those similarly situated should have been classified as hourly, non-exempt employees.

63. During relevant times, Defendants suffered and permitted the Named Plaintiff and those similarly situated to work more than forty (40) hours per workweek, while not compensating them for all such hours worked over forty (40) at a rate of at least one and one-half times their regular rates.

64. Defendants were aware, or should have been aware, that Named Plaintiffs and those similarly situated, performed work that required payment of overtime compensation. For example, Defendants required some of its patient care consultants to record the number of hours they worked in their timekeeping system. Defendants also routinely scheduled consultations six days a week from 9 a.m. to 6 p.m., which consultants were required to attend. Additionally, consults were regularly scheduled later than 6 p.m. during the end of the month push.

65. Defendants acted willfully, had knowledge of or showed reckless disregard for their conduct described herein. For example, Defendant BCC was involved in a lawsuit concerning substantially similar violations that was settled, but it continued its unlawful pay practices in violation of the FLSA. *See Bazzell et al v. Body Contour Centers, LLC*; USDC WD WA, Case No. 2:16-cv-00202-JLR (Judge James L. Robart) (the "*Bazzell* Case").

66. There are numerous similarly situated individuals who are or were employed by Defendants and who have also been denied overtime compensation in violation of the FLSA. These individuals would benefit from the issuance of court-supervised notice of this lawsuit and the opportunity to join by filing their written consent. Those similarly situated employees are known to Defendants and readily identifiable through Defendants' records.

## COUNT I
## Violation of the FLSA: Failure to Pay Overtime

67. Named Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

68. Named Plaintiffs bring this cause of action under 29 U.S.C. § 216(b) on behalf of themselves and other similarly situated employees. The proposed Collective Class for FLSA claims is defined as follows:

> All individuals who worked as patient care consultants, traveling patient care consultants, patient sales consultants (or other similar job titles), at any time during the three years prior to the filing of this Complaint to the present, at the following Sono Bello locations: Bellevue, Washington; Tacoma, Washington; Beverly Hills, California; Sacramento, California; San Diego, California; Chicago, Illinois; Cincinnati, Ohio; Cleveland, Ohio; Edina, Minnesota; Greenwood, Colorado; Houston, Texas; Overland Park, Kansas; Portland, Oregon; Salt Lake City, Utah; Scottsdale, Arizona; and St. Louis, Missouri; but excluding those that who opted into the "*Bazzell* Case" and did not opt out by the time the *Bazzell* Case was settled (the "FLSA Collective").

69. Defendants are required under the FLSA, 29 U.S.C. § 207, to pay wages to Named Plaintiffs and those similarly situated at a rate no less than one-and-one-half times their regular hourly rate of pay for all time worked in excess of forty (40) hours in individual workweeks.

70. Defendants improperly classified Named Plaintiffs and those similarly situated as exempt from the overtime wage provisions of the FLSA, 29 U.S.C. § 207.

71. Named Plaintiffs and those similarly situated are not exempt from the FLSA.

72. Defendants' Medical Clinics at which Plaintiffs and those similarly situated worked lacked a "retail concept" and were not "retail or service establishments" as that term is defined under the FLSA and corresponding regulations.

73. Defendants required Named Plaintiffs and those similarly situated to record hours worked through a time keeping system.

74. Defendants willfully failed and refused to pay Named Plaintiffs and those similarly situated overtime wages for all hours worked in excess of forty (40) per week.

75. Defendants' willful failure and refusal to pay Named Plaintiffs and those similarly situated overtime wages for all time worked in excess of forty (40) hours per week in individual workweeks at a rate of at least one and one-half their regular rates violates the FLSA, 29 U.S.C. §§ 207, 255.

76. As a result of these unlawful practices, Named Plaintiffs and others similarly situated suffered a loss of wages and are therefore entitled to recover unpaid wages for up to three years prior to the filing of their claims, liquidated damages, pre- and post-judgment interest, and attorneys' fees and costs.

77. Defendants are in possession and control of necessary documents and information from which Plaintiff would be able to precisely calculate damages; or were not kept by Defendants.

### III. PRAYER FOR RELIEF

Named Plaintiffs, on behalf of themselves and those similarly situated, pray for judgment against Defendants, jointly and severally, as follows:

A. Designation of this action as a collective action on behalf of Named Plaintiffs and those similarly situated, and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all those similarly situated apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual consent forms;

B. Judgment that Named Plaintiffs and those similarly situated are non-exempt employees entitled to protection under the FLSA;

C. Judgment against Defendants, jointly and severally, for violation of the overtime provisions of the FLSA;

D. Judgment that Defendants' actions, jointly and severally, as described above were willful;

E. An award to Named Plaintiffs and those similarly situated for the amount of unpaid wages owed and liquidated damages;

F. An award of prejudgment interest;

G. An award of post-judgment interest;

H. An award of reasonable attorneys' fees and costs; and

I. Leave to add additional plaintiffs by motion, the filing of written consent forms, or any other method approved by the Court;

J. Leave to add state law claims; and

K. For such other and further relief, in law or equity, as this Court may deem appropriate and just.

Date: <u>November 2, 2017</u>                    Respectfully submitted,

*s/ Robi J. Baishnab*
Robi J. Baishnab (0086195)
Robert E. DeRose (0055214)
**BARKAN MEIZLISH HANDELMAN GOODIN DEROSE WENTZ, LLP**
250 E. Broad St., 10th Floor
Columbus, Ohio 43215
Telephone: (614) 221-4221
Fax: (614) 744-2300
Email: rbaishnab@barkanmeizlish.com
            bderose@barkanmeizlish.com

James A. DeRoche (0055613)
Jeffrey D. Johnson (0077404)
Stuart I. Garson (0003133)
**GARSON JOHNSON LLC**
101 W. Prospect Avenue
1600 Midland Building
Cleveland, OH 44115
Phone: (216) 696-9330
Fax: (216) 696-8558
Email: jderoche@garson.com
           jjohnson@garson.com
           sgarson@garson.com

*Attorneys for the Named Plaintiffs
and Similarly Situated Employees*

## **<u>JURY DEMAND</u>**

Plaintiff requests a trial by a jury of eight (8) persons.